IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOSEPH MUCHERSON
ADC # 129908                                                                    PLAINTIFF

V.                              CASE NO. 5:09CV00385-BD

RAY HOBBS, *et al.*                                                        DEFENDANTS

ORDER

I.      Background:

On December 19, 2009, Plaintiff, an inmate at the Varner Supermax Unit of the

Arkansas Department of Correction ("ADC"), filed this lawsuit pro se under 42 U.S.C.

§ 1983.  (Docket entry #2)  Plaintiff alleges that Defendant Perry used excessive force

against him by attacking him with a steel bar.  As a result of the incident, Plaintiff

sustained abrasions and bruises to his arms.[1]

Defendant Perry now has filed a motion for summary judgment.  (#22)  In the

motion, Defendant Perry argues that: (1) Plaintiff's claims against him for monetary

_____

[1] The Court notes that Plaintiff does not specifically state whether he names
Defendant Perry in both his individual and official capacities. "[A]bsent a clear statement
that officials are being sued in their personal capacities, we interpret the complaint as
including only official-capacity claims." *Murphy v. Arkansas*, 127 F.3d 750, 754-55 (8th
Cir. 1997) (citation omitted).  However, a pro se complaint is to be construed liberally,
*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and examination of the body of the
complaint shows that Plaintiff intended to sue Defendant Perry in both his official and
individual capacities.  Further, in Plaintiff's deposition, Defendant Perry's attorney
mentioned that Plaintiff had sued Defendant Perry in his official capacity.  Plaintiff,
however, never explained in what capacity he was suing Defendant Perry.  (#23-1 at p.13)

damages in his official capacity are barred by sovereign immunity; (2) Plaintiff has failed

to state an excessive force claim as a matter of law; and (3) he is entitled to qualified

immunity.[2]  (#22)  Plaintiff has responded to Defendant Perry's motion.  (#27)

Defendant Perry's motion (#22) is GRANTED in part, and DENIED in part.

## II.    Analysis:

### A.    Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most

favorable to the nonmoving party, presents no genuine issue of material fact.  FED. R.

CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 246 (1986).  Once the moving party has successfully carried its

burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the

pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing

that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Mosley v. City of*

*Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest

on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le*

*Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).  If the opposing party fails to carry that burden

---

[2]  In the motion for summary judgment, Defendant Perry also argues that although
Plaintiff requests that the Court order that his employment with the ADC be terminated,
such a request is not a proper request for relief.  The Court agrees.  If this matter goes to
trial and Plaintiff proves that his constitutional rights were violated, the Court will
determine the appropriate form of relief.

or fails to establish the existence of an essential element of its case on which that party

will bear the burden of proof at trial, summary judgment should be granted.  See *Celotex,*

477 U.S. at 322.  "Although it is to be construed liberally, a *pro se* complaint must

contain specific facts supporting its conclusions."  *Martin v. Sargent*, 780 F.2d 1334,

1337 (8th Cir. 1985).

B.     Sovereign Immunity

In his motion for summary judgment, Defendant Perry correctly argues that

Plaintiff's official capacity claims for money damages are barred by sovereign immunity.

A person sued in his or her official capacity is not a "person" for purposes of 42 U.S.C.

§ 1983.  The law is well established that a civil litigant cannot obtain monetary damages

on a claim brought against state actors in their official capacities.  *Will v. Michigan Dep't*

*of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989).  Accordingly, Plaintiff's claim

against Defendant Perry for money damages in his official capacity fails, as a matter of

law.

C.     Excessive Force Claim

"To prove an Eighth Amendment violation, a prisoner must satisfy two

requirements, one objective and one subjective.  The first requirement tests whether,

viewed objectively, the deprivation of rights was sufficiently serious.  The second

requirement is subjective and requires that the inmate prove that the prison officials had a

sufficiently culpable state of mind."  *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)

3

(internal citations and quotations omitted).  "It is . . . clearly established that force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security." *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (citing *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002)); *Jones v. Shields*, 207 F.3d 491, 496-497 (8th Cir. 2000); *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir.1993); *Stenzel v. Ellis*, 916 F.2d 423, 426-427 (8th Cir. 1990)).

Officers do not violate the Eighth Amendment when they use force reasonably "in a good-faith effort to maintain or restore discipline."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Factors for consideration in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between the need and the degree of force used, the threat reasonably perceived by the correctional officers, efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.  *Hudson*, 503 U.S. at 7.

Here, Plaintiff claims that Defendant Perry used excessive force against him when he struck him several times with a steel bar.  In his motion for summary judgment, Defendant Perry argues that any force used during the incident in question was justified. Defendant Perry attaches to his motion for summary judgment the disciplinary papers concerning the incident.  (#23-3 at p.4)

4

According to Defendant Perry's report, on May 15, 2009, Defendant Perry instructed Plaintiff to uncover the window of his cell door three times.  When Defendant Perry approached the cell, Plaintiff knocked down the trap.  (#23-3 at p.4)  While Defendant Perry was attempting to close the trap, Plaintiff grabbed Defendant Perry's arm and "tried to pull [him] toward the trap."  (#23-3 at p.4)  At that time, Defendant Perry gave Plaintiff a "direct order to release [his] arm."  (#23-3 at p.4)  Defendant Perry explained that "the only way [to] get [Plaintiff] to release [his] arm was to hit [Plaintiff] with [his] bar."  (#23-3 at p.4)  When Plaintiff released Defendant Perry, Plaintiff swung at Defendant Perry, hitting him in his chest.  (#23-3 at p.4)  Defendant Perry then struck Plaintiff "2 or 3 more times."  (#23-3 at p.4)

Plaintiff's version of events varies from Defendant Perry's.  Although Plaintiff admits that he knocked down his trap door, he claims that after he did, Defendant Perry "started attacking [him] with a steel bar."  (#2 at p.4)  Plaintiff states that after he was struck several times, he tried to grab the bar to keep Defendant Perry from hitting [him], and grabbed Defendant Perry's name badge.  (#23-1 at pp.6 and 11-12)  Plaintiff specifically states that he did not touch Defendant Perry's shirt or person while grabbing his name badge.  (#23-1 at p. 12)  Plaintiff then pulled his arm inside of his cell and closed his trap.  (#23-1 at p.6)

In his response to the motion for summary judgment, Plaintiff states that Defendant Perry "simply lied in the disciplinary report."  (#27)  He explains that it would

not have been possible for him to swing at Defendant Perry in the position that he was in. (#27)

Based on the evidence presented, the Court finds that genuine issues of material fact exist precluding judgment as a matter of law.  First, the Court cannot conclusively state that the force was justified, given the situation, or that the force used during the incident was reasonable.  Because it is disputed whether Plaintiff actually grabbed Defendant Perry's arm or swung at Defendant Perry, the threat perceived by Defendant Perry cannot be determined at this time.

Further, although Defendant Perry is correct that in order to prevail on an excessive force claim the Plaintiff must have suffered actual injury, it is undisputed that Plaintiff was immediately taken to the infirmary after the incident.  Plaintiff's medical records indicate that he suffered bruises, swelling, and abrasions as a result of the incident.  (#23-3 at pp.20-25)  Moreover, Nurse Roe noted that Plaintiff should be seen immediately due to a "possible broke[n] arm."  (#23-3 at p.22)

While Plaintiff may not have suffered a serious injury, he apparently suffered an actual injury as a result of Defendant Perry's conduct.  This is sufficient to support an excessive force claim.  See *e.g.*, *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (actual injury requirement satisfied when individual had a bruised and swollen left eye and a reddish-purple face) and *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995)

(bruising, facial lacerations, and elevated blood pressure satisfied the actual injury requirement).

D.      Qualified Immunity

In his motion for summary judgment, Defendant Perry also argues that he is entitled to qualified immunity.  Qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  The purpose of qualified immunity is to ensure that officers are on notice that their conduct is unlawful before they can be sued. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S .Ct. 2508 (2002).

Courts are no longer required to use a two-step sequential analysis when addressing qualified immunity.  *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808 (2009) (abrogating the sequential analysis requirement in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151(2001)).  The analysis still requires two steps, however.  *Id*. Courts must determine, in no particular sequence: (1) whether the offending conduct violated a constitutional or statutory right; and (2) whether the right was clearly established at the time of the alleged conduct.  *Krout v. Goemmer*, 583 F.3d 557, 2009 WL 3172180 (8th Cir. 2009) (citations omitted).

In 2001, the Supreme Court significantly narrowed the meaning of "clearly established constitutional or statutory rights" in the context of qualified immunity.  The

Court directed lower courts to analyze a defendant's conduct "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. The Supreme Court has rejected, however, the argument that cases must have fundamentally or materially similar facts to the case at hand in order to clearly establish a right or proscribe certain conduct. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508 (2002).

In determining whether a state actor is entitled to qualified immunity, the key question is whether the state of the law at the time of the incident gave the state actor fair warning that his conduct was unconstitutional. *Id.* "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004). "This standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Stufflebeam v. Harris*, 521 F.3d 884, 888-889 (8th Cir. 2008) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534 (1991)).

The precise question for purposes of deciding whether excessive force was used in this case is whether Defendant Perry violated Plaintiff's rights when he struck him several times with a steel bar when, according to Plaintiff, there was no actual or perceived threat of harm. If it was a violation, the Court must determine whether the law clearly established at the time of the incident.

8

The Court concludes that if there was no threat of perceived harm, the law was well established at the time of the incident that was a violation of Plaintiff's rights to strike Plaintiff with a steel bar numerous times.  As a result, the Court cannot say that Defendant Perry is entitled to qualified immunity at this time.

**III.    Conclusion:**

Defendant Perry's motion for summary judgment (#22) is GRANTED in part, and DENIED in part.  Plaintiff's claims for money damages against Defendant Perry in his official capacity are DISMISSED, with prejudice.  The motion is DENIED as to the remaining claims.

IT IS SO ORDERED this 5th day of October, 2010.


_____
UNITED STATES MAGISTRATE JUDGE